#350

MK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY JONES, Derivatively On Behalf of NUTRISYSTEM, INC.<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. HAGAN, THOMAS F. CONNERTY, JAMES D. BROWN, BRUCE BLAIR, IAN J. BERG, BRIAN P. TIERNEY, MICHAEL A. DIPIANO, WARREN V. MUSSER, STEPHEN T. ZARRILLI, ROBERT F. BERNSTOCK and MICHAEL F. DEVINE, III,<br><br>Defendants,<br><br>-and-<br><br>NUTRISYSTEM, INC., a Delaware corporation,<br><br>Nominal Defendant. | Case No. 07 5193<br><br>VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, WASTE OF CORPORATE ASSETS, UNJUST ENRICHMENT AND VIOLATIONS OF FEDERAL SECURITIES LAWS<br><br>FILED<br>DEC 7 2007<br>By ______ Dep. Clerk<br><br><u>DEMAND FOR JURY TRIAL</u> |

(12) 12 10 07

Plaintiff, by his attorneys, submits this Verified Shareholder Derivative Complaint against the defendants named herein. The allegations in this verified complaint are based upon the investigation and analysis of NutriSystem's public Securities and Exchange Commission ("SEC") filings, press releases, news reports, analyst reports and other public NutriSystem statements. To the best of plaintiff's knowledge, information and belief, these allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## NATURE AND SUMMARY OF THE ACTION

1. This is a shareholder derivative action brought on behalf and for the benefit of NutriSystem, Inc. ("NutriSystem" or the "Company") against certain of its officers and directors seeking to recover damages and other legal and equitable relief necessary or appropriate to remedy defendants' acts and omissions in violation of state and federal law, including without limitation their breaches of fiduciary duties, waste of Company assets, unjust enrichment and apparent violations of the Securities Exchange Act of 1934 ("Exchange Act") that occurred between February 2007 and the present (the "Relevant Period"). Among other things, defendants improperly diverted nonpublic information concerning the Company's business, operations and prospects to their own personal use and benefit. In addition, defendants' conduct has caused NutriSystem to suffer substantial monetary losses and other damages, such as to its reputation and goodwill.

2. Throughout the Relevant Period, defendants caused or allowed NutriSystem, a provider of weight management and fitness products, to issue public statements that consistently touted solid growth prospects. In particular, on February 14, 2007, NutriSystem issued initial relevance guidance of $720 to $740 million for full year 2007. Later, defendants caused or allowed the Company to raise 2007 revenue that guidance to $810 to $820 million on claims of continuing solid growth and improving margins.

3. Meanwhile, NutriSystem's Board of Directors ("Board") authorized a $200 million share repurchase program, a decision apparently reflecting the unchecked and baseless views of Board members that the Company's shares were worth ***more*** than the value placed on the public market and, thus, that such repurchases were the best use of the $200 million in Company cash

dedicated to that program. Indeed, NutriSystem repurchased over $97 million of its own shares during the first six months of 2007. Moreover, certain NutriSystem insiders, including members of the Board, reaped over $19 million in proceeds from the sale of their own personally held shares at inflated prices during the Relevant Period.

4. During June 2006, GlaxoSmithKline released its new weight loss drug, Alli. During the Relevant Period, Alli substantially affected the Company's sales and growth prospects.

5. Thus, NutriSystem's shareholders were shocked to learn on October 3, 2007 that the Company was not experiencing solid growth and improving margins. In fact, NutriSystem later downward revised its 2007 revenue guidance to $770 to $776 million. In the wake of these disclosures, the Company's value declined by over 65%—erasing over $882 million in market capitalization. As a result, NutriSystem's credibility with analysts and the investing public drastically declined.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction in this case arising under Article III of the United States Constitution and 28 U.S.C. §1331 because of claims arising under the Exchange Act. This Court also has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. §1332(a)(2) because complete diversity exists between the plaintiff and each defendant, and the amount in controversy exceeds $75,000. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

7. This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice. Several of the defendants are citizens of the Commonwealth of Pennsylvania.

8. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because: (i) NutriSystem maintains its principal place of business in the District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to NutriSystem occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

9. Plaintiff Timothy Jones is and was, at times relevant hereto, an owner and holder of NutriSystem common stock. Plaintiff is a citizen of California.

10. Nominal defendant NutriSystem is a Delaware corporation with its principal executive offices located at 300 Welsh Road, Building 1, Suite 100, Horsham, Pennsylvania. NutriSystem provides weight management and fitness products.

11. Defendant Michael J. Hagan ("Hagan") is NutriSystem's Chairman of the Board and Chief Executive Officer and has been since December 2002. Hagan is also NutriSystem's President and has been since July 2006. Because of his positions, defendant Hagan knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse non-public information about the business of NutriSystem including its finances, operations and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith. During the Relevant Period, Hagan participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and NutriSystem shareholders. NutriSystem paid Hagan the following compensation:

| Defendant | Fiscal Year | Salary | Bonus | Option Awards |
|---|---|---|---|---|
| Hagan | 2006 | $165,000 | $295,000 | $37,772 |

Defendant Hagan sold 60,000 shares for $4,020,362.64 in proceeds while in possession of material non-public information. Hagan is a citizen of New Jersey.

12. Defendant Thomas F. Connerty ("Connerty") is NutriSystem's Chief Marketing Officer and has been since November 2004. Connerty is also NutriSystem's Executive Vice President, Program Development and has been since July 2006. Because of his positions, defendant Connerty knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse non-public information about the business of NutriSystem including its finances, operations and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings, as well as reports and other information provided to him in connection therewith. During the Relevant Period, Connerty participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and NutriSystem shareholders. NutriSystem paid Connerty the following compensation:

| Defendant | Fiscal Year | Salary | Bonus | Option Awards | All Other Compensation |
|---|---|---|---|---|---|
| Connerty | 2006 | $235,817 | $450,000 | $397,775 | $9,069 |

Defendant Connerty sold 125,000 shares for $7,818,657.30 in proceeds while in possession of material non-public information. Connerty is a citizen of the Commonwealth of Pennsylvania.

13. Defendant James D. Brown ("Brown") was NutriSystem's Chief Financial Officer from December 1999 until August 2007. Brown was also NutriSystem's Treasurer from January 2000 to August 2007, Secretary from January 2003 until August 2007, and Executive Vice President from April 2005 until August 2007. Because of his positions, defendant Brown knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse non-public information about the business of NutriSystem including its finances, operations and present and future business prospects, via access to internal corporate documents, conversations and

connections with other corporate officers and employees, attendance at management meetings, as well as reports and other information provided to him in connection therewith. During the Relevant Period, Brown participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and NutriSystem shareholders. NutriSystem paid Brown the following compensation:

| Defendant | Fiscal Year | Salary | Bonus | Option Awards | All Other Compensation |
|---|---|---|---|---|---|
| Brown | 2006 | $191,539 | $380,000 | $53,698 | $7,249 |

Defendant Brown sold 47,000 shares for $2,942,456.90 in proceeds while in possession of material non-public information. Brown is a citizen of the Commonwealth of Pennsylvania.

14. Defendant Bruce Blair ("Blair") is NutriSystem's Senior Vice President, Operations and Chief Information Officer and has been since April 2005. Because of his positions, defendant Blair knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse non-public information about the business of NutriSystem including its finances, operations and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings, as well as reports and other information provided to him in connection therewith. During the Relevant Period, Blair participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and NutriSystem shareholders. NutriSystem paid Blair the following compensation:

| Defendant | Fiscal Year | Salary | Bonus | Option Awards | All Other Compensation |
|---|---|---|---|---|---|
| Blair | 2006 | $179,692 | $355,000 | $227,542 | $5,877 |

Defendant Blair sold 41,667 shares for $2,581,318.54 in proceeds while in possession of material non-public information. Blair is a citizen of the Commonwealth of Pennsylvania.

15. Defendant Ian J. Berg ("Berg") is a NutriSystem director and has been since February 2003. Because of his position, defendant Berg knew, consciously disregarded, was reckless and

grossly negligent in not knowing or should have known the adverse non-public information about the business of NutriSystem including its finances, operations and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith. During the Relevant Period, Berg participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and NutriSystem shareholders. Defendant Berg sold 16,112 shares for $1,127,840.00 in proceeds while in possession of material non-public information. Berg is a citizen of New Jersey.

16. Defendant Brian P. Tierney ("Tierney") is a NutriSystem director and has been since February 2003. Because of his position, defendant Tierney knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse non-public information about the business of NutriSystem including its finances, operations and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith. During the Relevant Period, Tierney participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and NutriSystem shareholders. Defendant Tierney sold 15,000 shares for $987,362.64 in proceeds while in possession of material non-public information. Tierney is a citizen of New Jersey.

17. Defendant Michael A. DiPiano ("DiPiano") is a NutriSystem director and has been since December 2002. Because of his position, defendant DiPiano knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse non-public information about the business of NutriSystem including its finances, operations and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof,

as well as reports and other information provided to him in connection therewith. During the Relevant Period, DiPiano participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and NutriSystem shareholders. DiPiano is a citizen of the Commonwealth of Pennsylvania.

18. Defendant Warren V. Musser ("Musser") is a NutriSystem director and has been since February 2003. Because of his position, defendant Musser knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse non-public information about the business of NutriSystem including its finances, operations and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith. During the Relevant Period, Musser participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and NutriSystem shareholders. Musser is a citizen of the Commonwealth of Pennsylvania.

19. Defendant Stephen T. Zarrilli ("Zarrilli") is a NutriSystem director and has been since December 2003. Because of his position, defendant Zarrilli knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse non-public information about the business of NutriSystem including its finances, operations and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith. During the Relevant Period, Zarrilli participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and NutriSystem shareholders. Zarrilli is a citizen of the Commonwealth of Pennsylvania.

20. Defendant Robert F. Bernstock ("Bernstock") is a NutriSystem director and has been since December 2005. Because of his position, defendant Bernstock knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse non-public information about the business of NutriSystem including its finances, operations and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith. During the Relevant Period, Bernstock participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and NutriSystem shareholders. Bernstock is a citizen of Ohio.

21. Defendant Michael F. Devine, III ("Devine") is a NutriSystem director and has been since July 2007. Because of his position, defendant Devine knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse non-public information about the business of NutriSystem including its finances, operations and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith. During the Relevant Period, Devine participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and NutriSystem shareholders. Devine is a citizen of the Commonwealth of Pennsylvania.

22. The defendants identified in ¶¶11, 15-21 are referred to herein as the "Director Defendants." The defendants identified in ¶¶11-14 are referred to herein as the "Officer Defendants." The defendants identified in ¶¶11-16 are referred to herein as the "Insider Selling Defendants." Collectively, the Director Defendants, the Officer Defendants and the Insider Selling Defendants are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

23. By reason of their positions as officers, directors and/or fiduciaries of NutriSystem and because of their ability to control the business and corporate affairs of NutriSystem, the Individual Defendants owed NutriSystem and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage NutriSystem in a fair, just, honest and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of NutriSystem and its shareholders so as to benefit all shareholders equally, not in furtherance of their own personal interests, and not in a manner that diverts material nonpublic information concerning the Company's business operations and prospects to their own personal benefit.

24. Each director and officer of the Company owes to NutriSystem and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's revenue, margins, operations, performance, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

25. The Individual Defendants, because of their positions of control and authority as directors and/or officers of NutriSystem, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial and directorial positions with NutriSystem, each of the Individual Defendants had access to adverse non-public information about the financial condition, operations, and improper representations of NutriSystem.

26. At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of NutriSystem, and was at all times acting within the course and scope of such agency.

27. To discharge their duties, the officers and directors of NutriSystem were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of NutriSystem were required to, among other things:

(a) refrain from acting upon material inside corporate information to benefit themselves;

(b) ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(c) conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d) properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e) remain informed as to how NutriSystem conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

(f) ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations.

28. Each Individual Defendant, by virtue of his position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants

complained of herein involves a knowing and culpable violation of their obligations as directors and officers of NutriSystem, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and/or directors of the Company during the Relevant Period have been ratified by the remaining Individual Defendants who collectively comprised all of NutriSystem's Board during the Relevant Period.

29. The Individual Defendants breached their duties of loyalty and good faith and violated the Exchange Act by allowing defendants to cause, or by themselves causing, the Company to misrepresent its financial results and prospects, as detailed herein *infra*, and by failing to prevent the Individual Defendants from taking such illegal actions. In addition, as a result of defendants' illegal actions and course of conduct during the Relevant Period, the Company is now the subject of a class action lawsuit that alleges violations of securities laws. As a result, NutriSystem has expended, and will continue to expend, significant sums of money.

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

30. In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

31. During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did: (i) conceal the fact that the Company was improperly misrepresenting its business prospects; (ii) enhance the Individual Defendants' executive and directorial positions at NutriSystem and the profits, power and prestige that the Individual Defendants enjoyed as a result of holding these positions; (iii) facilitate the Insider Selling Defendants' sale of over $19 million of their personally held shares; (iv) facilitate the repurchase of over $97 million of the Company's own shares at artificially inflated prices; and

(iv) deceive the investing public, including shareholders of NutriSystem, regarding the Individual Defendants' management of NutriSystem's operations, the Company's financial health and stability, and its future business prospects, specifically related to the Company's financials that had been misrepresented by defendants throughout the Relevant Period. In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

32. The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct during the Relevant Period. During this time, the Individual Defendants caused the Company to conceal the true fact that NutriSystem was misrepresenting its business prospects.

33. The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, unjust enrichment and violations of the Exchange Act and to conceal adverse information concerning the Company's operations, financial condition and future business prospects.

34. The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently release improper statements. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

35. Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his overall contribution to and furtherance of the wrongdoing.

## IMPROPER STATEMENTS

36. The Individual Defendants by their fiduciary duties of loyalty, candor, diligence, care, and good faith owe to NutriSystem a duty to ensure that the Company's financial reporting fairly represents the operations and financial condition of the Company. In order to adequately carry out these duties, it is necessary for the Individual Defendants to know and understand the material, non-public information that should be either disclosed or omitted from the Company's public statements.

37. This material non-public information included without limitation the fact that NutriSystem was facing increased competition that was causing the Company's marketing to become less efficient, and was having an adverse impact on its results of operations. For example, the statements defendants wrongfully caused or allowed NutriSystem to make during the Relevant Period improperly concealed that, partly as a result of competition and less effective marketing, the Company was attracting fewer new customers and incurring higher customer acquisition costs.

38. On February 14, 2007, the Individual Defendants caused or allowed NutriSystem to issue a press release announcing a $200 million share repurchase program and its financial results for its fourth fiscal quarter 2006. The press release forecasted increased revenues and growth. Defendant Hagan commented that "the first quarter of 2007 has started off strong with growth across all of our market segments" and that "customer acquisition costs have improved over the quarter." Defendant Brown added that "[w]e expect operating margin to continue to expand in the first quarter of 2007. Using the high end of our guidance, we anticipate operating margin to reach 25% in the first quarter of 2007." In particular, the press release stated:

> "2006 was an exceptional year for us.... For the past several years the NutriSystem team has had a singular focus on our customer, and that obsession has paid off with extraordinary financial results."
>
> "We also proved that the men's weight loss market, long neglected by commercial weight loss companies, can become a large opportunity for NutriSystem because of our successful product, anonymous delivery platform and convenient approach to weight loss. We feel the men's weight loss market will be an important driver of our business in the years to come.... ***Additionally, the first quarter of 2007 has started off strong with growth across all of our market segments***, with particular momentum in the men's segment and reactivations of ex-customers. ***Other key financial metrics such as customer acquisition costs have improved over the course of the quarter***, especially considering the 'infancy stage' of the men's and senior's market segments. The women's market, our core customer segment,

continued to perform well in 2006 and is growing in 2007 due to enhanced media marketing efforts and a strong referral business."

* * *

"We continue to increase the profitability and scalability of our business model. Year over year, fourth quarter gross margin increased by 5.6 percentage points and operating margin jumped by 8.0 percentage points," said James D. Brown, Executive Vice President and Chief Financial Officer. ***"We expect operating margin to continue to expand in the first quarter of 2007. Using the high end of our guidance, we anticipate operating margin to reach 25% in the first quarter of 2007.***"

* * *

First Quarter and Full Year 2007 Outlook

For the first quarter of 2007, the Company estimates that revenues will be between $205 million and $215 million, an increase of at least 40% year-over-year. Diluted earnings per share is expected to be between $0.88 and $0.92, an increase of at least 47% year-over-year. Further, the Company expects to add at least 300,000 new Direct channel customers in the first quarter of 2007. For the full year 2007, the Company estimates that revenues will be between $720 million and $740 million, and diluted earnings per share will be between $3.00 and $3.10 per share. This guidance does not reflect the effect of any stock repurchases.

"We are very pleased with our start in 2007. ***Our advertising continues to perform, our new market segments provide us additional visibility for growth***, and our revenue stream from ex-customers is starting strong," commented Michael Hagan, Chairman, President and Chief Executive Officer.

39. On April 25, 2007, the Individual Defendants caused or allowed NutriSystem to issue a press release announcing its financial results for the first fiscal quarter 2007. This press release continued to paint the Company's business prospects in a positive light. For the quarter, the Company reported revenues of $238 million and net income of $37 million or $1.04 per diluted share. Moreover, the Company raised its guidance for the full year to a range of $790 to $805 million. In particular, the press release stated:

- An increase in revenues of 62% to $238,360,000 in the first quarter of 2007 compared to $146,751,000 in revenues in the first quarter of 2006;

- Growth in operating income to $59,610,000 (25.0% of revenues) in the first quarter of 2007 compared to $35,179,000 (24.0% of revenues) in the first quarter of 2006; and

- An increase in net income of 70% to $37,867,000 or $1.04 per diluted share in the first quarter of 2007 compared to net income of $22,335,000 or $0.60 per diluted share in the first quarter of 2006.

"The solid growth of our core women's market and continued strength of the men's market allowed us to achieve record earnings," said Michael J. Hagan, Chairman, President and Chief Executive Officer. "In addition, an integral part of our first quarter has been the ongoing expansion of our pool of ex-customers and their desire to return to NutriSystem for weight management services. The operating margin expansion we saw in the first quarter was partially due to the growth in revenue from ex-customers," continued Mr. Hagan.

* * *

"Our customer economics are strong and getting stronger," said James D. Brown, Executive Vice President and Chief Financial Officer. "Compared to the first quarter of last year, revenue per customer in the initial diet cycle, gross margin and the value per customer net of food and customer acquisition costs all increased. We also expect that reactivation revenue (revenue from customers more than nine months removed from their first purchase) will be about $93 million in the aggregate in 2007 compared to $38 million in 2006."

"The business continues to generate substantial operating cash flow," continued Mr. Brown. "We deployed $76 million in the first quarter to repurchase 1.7 million shares of common stock, and funded most of the buyback with net cash from operations of $66 million."

Second Quarter and Revised Full Year 2007 Outlook

For the second quarter of 2007, the Company estimates that revenues will be between ***$190 and $200 million***, an increase of at least 43% year over year. Diluted earnings per share are expected to be between $0.82 and $0.86, an increase of at least 55%. Further, the Company expects to add at least 210,000 new Direct channel customers in the second quarter of 2007. The Company now expects full year 2007 revenues ***will be between $790 million and $805 million***. 2007 diluted earnings per share are expected to be between $3.34 and $3.46 per share. This guidance does not reflect the effect of any potential future stock repurchases.

"2007 is shaping up to be a very good year for us. ***Our 2007 strategy is to focus on three areas: profitable new customer growth across all market segments - women, men, and seniors***; continue to improve retention and reactivation efforts; and invest in product areas such as our new 2008 weight loss program that advance customer health while growing the lifelong value of each customer," commented Mr. Hagan.

40. On July 24, 2007, the Individual Defendants caused or allowed NutriSystem to issue a press release announcing its financial results for the second quarter of 2007, the period ended June 30, 2007. The press release affirmed that NutriSystem was experiencing "solid growth." Further, the press release stated that for the upcoming quarter revenue was estimated to be between $200 and $208 million, and expects diluted earnings per share to be between $0.77 and $0.82. Under the

Individual Defendants' direction, NutriSystem again raised its full year earnings guidance to a range of $810 to $820 million. The press release reported the following results for 2Q:07:

- An increase in revenue of 61% to $213,556,000 in the second quarter of 2007 compared to $132,631,000 in revenue in the second quarter of 2006;

- Growth in operating income to $52,729,000 (24.7% of revenues) in the second quarter of 2007 compared to $31,030,000 (23.4% of revenues) in the second quarter of 2006; and

- An increase in diluted earnings per share of 81% to $0.96 in the second quarter of 2007 compared to $0.53 per diluted share in the second quarter of 2006.

"***The quarter was a very good one and we were pleased with the solid growth in our core women's market*** and continued strength in revenue coming from our ex-customers," said Michael J. Hagan, Chairman, President and Chief Executive Officer. "In addition, the growth in the men's and senior's market segments for the second quarter exceeded our expectations," continued Mr. Hagan.

* * *

"In the second quarter, we increased operating margin by 130 basis points year over year," said James D. Brown, Executive Vice President and Chief Financial Officer. "At the same time we made substantial investments in the business to improve future profitability including a new e-commerce platform, the new food program, a new call center and international expansion."

* * *

Third Quarter and Revised Full Year 2007 Outlook

For the third quarter of 2007, the Company estimates ***that revenue will be between $200 and $208 million, and expects diluted earnings per share to be between $0.77 and $0.82.*** Further, the Company expects to add approximately 245,000 new Direct channel customers in the third quarter of 2007. The Company is raising its full year 2007 guidance and now expects revenue to be between ***$810 million and $820 million*** and 2007 diluted earnings per share to be between $3.46 and $3.52 per share. This guidance does not reflect the effect of any potential future stock repurchases.

**THE TRUTH IS REVEALED:**
**NUTRISYSTEM WAS NOT EXPERIENCING SOLID GROWTH**

41. Then, on October 3, 2007, NutriSystem issued a press release announcing its preliminary third quarter 2007 results and revised earnings guidance for the full year of 2007. For the quarter, NutriSystem forecasted earnings of only $188 million—well below the earlier forecasted $200 and $208 million earnings range. NutriSystem also reported that the number of new customers

buying the Company's products declined 7% from same quarter of the previous year. Defendant Hagan admitted that "our performance with new customers we believe was affected by shorter-term ***competitive pressures*** which caused our marketing dollars to become less efficient, resulting in fewer new Direct Business customers than anticipated and customer acquisition costs to be higher than anticipated." In particular, the press release stated:

> Third Quarter 2007 Preliminary Results:
>
> - Revenues expected to be approximately $188 million, representing a 21% increase over the third quarter prior year.
> - ***New customers expected to be approximately 218,000 for the Direct business, representing a 7% decline from the third quarter prior year.***
> - Operating income for the nine months ended September 30, 2007 expected to be between $145 million and $148 million.
> - Earnings per diluted share expected to be between $0.62 and $0.66.
> - Cash, cash equivalents and marketable securities expected to increase by $35 million in the quarter, with $117 million in cash, cash equivalents and marketable securities expected at quarter end.
>
> Michael J. Hagan, Chairman and Chief Executive Officer of NutriSystem stated, "After a very strong first half of the year, our results for the third quarter didn't meet our expectations. We continue to be satisfied with our success in reactivating former customers, ***but our performance with new customers we believe was affected by shorter-term competitive pressures which caused our marketing dollars to become less efficient, resulting in fewer new Direct Business customers than anticipated and customer acquisition costs to be higher than anticipated."***

42. On October 24, 2007, NutriSystem announced its fiscal third quarter 2007 results. The quarter's earnings were only $188 million. Further, NutriSystem downward revised its yearly earnings projections to a range of $770 million to $776 million—$40 million below the Company's previous estimates. In the press release, defendant Hagan admitted that "our growth in new customers in the quarter was off about 11% versus the guidance we provided in July 2007." The number of new customers is now expected to be down in the fourth quarter compared to the previous year. The press release reported:

> - An increase in revenue of 21% to $188,283,000 in the third quarter of 2007 compared to $155,258,000 in revenue in the third quarter of 2006;

- A decrease in operating income to $34,485,000 (18.3% of revenues) in the third quarter of 2007 compared to $36,678,000 (23.6% of revenues) in the third quarter of 2006; and

- An increase in diluted earnings per share to $0.64 in the third quarter of 2007 as compared to $0.63 per diluted share in the third quarter of 2006.

"Although we continue to feel positive about our business and its long-term strength, the third quarter results didn't meet our growth expectations," said Michael J. Hagan, Chairman and Chief Executive Officer. ***"We believe competitive pressures from new entrants in the weight loss market had a larger effect on our marketing efficiency than anticipated.*** We continue to be satisfied with our reactivation business but ***our growth in new customers in the quarter was off about 11% versus the guidance we provided in July 2007***. We did, however, continue to demonstrate that the business generates cash as we added roughly $35 million to our cash balance during the quarter."

* * *

Fourth Quarter and Revised Full Year 2007 Outlook

The Company estimates fourth quarter 2007 revenues will be approximately flat on a year-over-year basis. ***Full year revenues are now expected to be between $770 million and $776 million***. Given the uncertainty around competitive pressures, the seasonally slower fourth quarter, and the timing of the launch of the new food program, ***the Company expects the number of new customers in the fourth quarter of 2007 to be down about 20% on a year-over-year basis.***

## REASONS THE STATEMENTS WERE IMPROPER

43. The Individual Defendants wrongfully caused or allowed Nutrisystem to issue the improper statement described above. As a result, NutriSystem's Relevant Period statements failed to disclose and misrepresented the following material adverse facts, which the Individual Defendants knew, consciously disregarded, were reckless and grossly negligent in not knowing or should have known:

(a) that the Company was signing up fewer new customers and was not performing according to internal expectations;

(b) that the Company's costs of acquiring new customers were significantly increasing;

(c) that the Company's performance was being negatively impacted by competition from other weight loss products on the market; and

(d) as a result of the foregoing, NutriSystem was not experiencing solid growth and improving margins.

**DAMAGES TO NUTRISYSTEM CAUSED BY THE INDIVIDUAL DEFENDANTS**

44. As a result of the Individual Defendants' improper conduct, NutriSystem disseminated improper statements concerning its operating and financial condition and business prospects. These improper statements devastated NutriSystem's credibility as reflected in a 65% decline ($882 million) market capitalization loss.

45. At the same time that the Individual Defendants were causing NutriSystem to suffer such devastation of its market capitalization, the Insider Selling Defendants were profiting by selling over $19 million of their personally held stock at an average of $63 per share. The Insider Selling Defendants' average sale price was significantly greater than NutriSystem's current share price of less than $31 per share.

46. Moreover, while NutriSystem's shares were artificially inflated, the Individual Defendants directed the Company to waste assets through the buyback of over $97 million worth of its own shares at an average price of $48 per share.

47. Further, as a direct and proximate result of the Individual Defendants' actions, NutriSystem has expended and will continue to expend significant sums of money. Such expenditures include, but are not limited to:

(a) Costs incurred in investigating and defending NutriSystem and certain officers in the class actions, plus potentially millions of dollars in settlement or to satisfy an adverse judgment; and

(b) Costs incurred from compensation and benefits paid to the defendants who have breached their duties to NutriSystem.

48. Moreover, these actions have irreparably damaged NutriSystem's corporate image and goodwill. For at least the foreseeable future, NutriSystem will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal

behavior and have misled the investing public, such that NutriSystem's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## THE IMPROPER BUYBACK

49. During the Relevant Period, while NutriSystem's stock was artificially inflated due to the improper statements described above, the Director Defendants authorized the buyback of over $97 million worth of its own shares at an average price of approximately $48 per share, which is substantially higher than NutriSystem's current share price of less than $31 per share and significantly less than the $63 per share the defendants averaged in selling their own NutriSystem stock holdings during the Relevant Period. On information and belief, in authorizing the buyback, the Board members failed to properly discuss and consider the imminent release of GlaxoSmithKline's new weight loss drug, Alli, among other things. While NutriSystem was repurchasing these shares, the Insider Selling Defendants made the sales described below.

## INSIDER SELLING

50. The Insider Selling Defendants, because of their positions, knew that the statements the Company publicly made were incorrect. They also knew that the misstatements would create an inflated stock price. The Insider Selling Defendants took advantage of this undisclosed information to sell their personally held stock for considerably more than they were worth. Therefore, while in possession of undisclosed material adverse information, the Insider Selling Defendants sold the following shares of NutriSystem's stock:

| Insider Last Name | Transaction Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| **BERG** | 7/2/2007 | 10,112 | $70.00 | $707,840.00 |
| | 7/2/2007 | 6,000 | $70.00 | $420,000.00 |
| | | **16,112** | | **$1,127,840.00** |
| | | | | |
| **BLAIR** | 5/2/2007 | 300 | $62.43 | $18,729.00 |
| | 5/2/2007 | 200 | $62.46 | $12,492.00 |
| | 5/2/2007 | 400 | $62.30 | $24,920.00 |
| | 5/2/2007 | 300 | $62.29 | $18,687.00 |
| | 5/2/2007 | 700 | $62.28 | $43,596.00 |
| | 5/2/2007 | 5,403 | $62.25 | $336,336.75 |
| | 5/2/2007 | 100 | $62.32 | $6,232.00 |
| | 5/2/2007 | 100 | $62.31 | $6,231.00 |

| | | | | |
|---|---|---|---|---|
| | 5/2/2007 | 600 | $62.27 | $37,362.00 |
| | 5/2/2007 | 300 | $62.26 | $18,678.00 |
| | 5/2/2007 | 1,000 | $62.17 | $62,170.00 |
| | 5/2/2007 | 100 | $62.11 | $6,211.00 |
| | 5/2/2007 | 1,336 | $62.13 | $83,005.68 |
| | 5/2/2007 | 300 | $62.04 | $18,612.00 |
| | 5/2/2007 | 400 | $62.05 | $24,820.00 |
| | 5/2/2007 | 2,001 | $62.15 | $124,362.15 |
| | 5/2/2007 | 2,200 | $62.14 | $136,708.00 |
| | 5/2/2007 | 100 | $62.10 | $6,210.00 |
| | 5/2/2007 | 200 | $62.07 | $12,414.00 |
| | 5/2/2007 | 400 | $62.06 | $24,824.00 |
| | 5/2/2007 | 192 | $62.02 | $11,907.84 |
| | 5/2/2007 | 300 | $62.08 | $18,624.00 |
| | 5/2/2007 | 200 | $62.03 | $12,406.00 |
| | 5/2/2007 | 1,428 | $62.00 | $88,536.00 |
| | 5/2/2007 | 405 | $61.93 | $25,081.65 |
| | 5/2/2007 | 100 | $61.92 | $6,192.00 |
| | 5/2/2007 | 200 | $62.01 | $12,402.00 |
| | 5/2/2007 | 500 | $61.87 | $30,935.00 |
| | 5/2/2007 | 400 | $61.88 | $24,752.00 |
| | 5/2/2007 | 100 | $61.86 | $6,186.00 |
| | 5/2/2007 | 200 | $61.85 | $12,370.00 |
| | 5/2/2007 | 100 | $61.83 | $6,183.00 |
| | 5/2/2007 | 749 | $61.95 | $46,400.55 |
| | 5/2/2007 | 2,601 | $61.90 | $161,001.90 |
| | 5/2/2007 | 137 | $61.89 | $8,478.93 |
| | 5/2/2007 | 100 | $61.73 | $6,173.00 |
| | 5/2/2007 | 93 | $61.79 | $5,746.47 |
| | 5/2/2007 | 2,107 | $61.71 | $130,022.97 |
| | 5/2/2007 | 100 | $61.82 | $6,182.00 |
| | 5/2/2007 | 600 | $61.78 | $37,068.00 |
| | 5/2/2007 | 351 | $61.77 | $21,681.27 |
| | 5/2/2007 | 200 | $61.75 | $12,350.00 |
| | 5/2/2007 | 3,667 | $61.74 | $226,400.58 |
| | 5/2/2007 | 504 | $61.72 | $31,106.88 |
| | 5/2/2007 | 7,696 | $61.70 | $474,843.20 |
| | 5/2/2007 | 2,197 | $61.76 | $135,686.72 |
| | | **41,667** | | **$2,581,318.54** |
| | | | | |
| **BROWN** | 9/10/2007 | 12,000 | $57.26 | $687,150.00 |
| | 7/10/2007 | 7,000 | $71.37 | $499,587.20 |
| | 6/11/2007 | 7,000 | $66.37 | $464,604.00 |
| | 5/10/2007 | 21,000 | $61.48 | $1,291,115.70 |
| | | **47,000** | | **$2,942,456.90** |
| | | | | |
| **CONNERTY** | 4/4/2007 | 6,300 | $55.00 | $346,500.00 |
| | 4/4/2007 | 1,100 | $55.01 | $60,511.00 |
| | 4/4/2007 | 700 | $55.02 | $38,514.00 |

| | | | | |
|---|---|---|---|---|
| | 4/4/2007 | 600 | $55.03 | $33,018.00 |
| | 4/5/2007 | 6,200 | $55.00 | $341,000.00 |
| | 4/5/2007 | 2,800 | $55.01 | $154,028.00 |
| | 4/5/2007 | 2,200 | $55.02 | $121,044.00 |
| | 4/5/2007 | 900 | $55.03 | $49,527.00 |
| | 4/5/2007 | 2,600 | $55.04 | $143,104.00 |
| | 4/5/2007 | 5,100 | $55.05 | $280,755.00 |
| | 4/5/2007 | 1,200 | $55.06 | $66,072.00 |
| | 4/5/2007 | 300 | $55.07 | $16,521.00 |
| | 4/26/2007 | 11,800 | $65.00 | $767,000.00 |
| | 4/26/2007 | 600 | $65.28 | $39,168.00 |
| | 4/26/2007 | 800 | $65.29 | $52,232.00 |
| | 4/26/2007 | 200 | $65.30 | $13,060.00 |
| | 4/26/2007 | 200 | $65.97 | $13,194.00 |
| | 4/26/2007 | 1,000 | $66.10 | $66,100.00 |
| | 4/26/2007 | 400 | $66.11 | $26,444.00 |
| | 4/26/2007 | 400 | $66.12 | $26,448.00 |
| | 4/26/2007 | 800 | $66.13 | $52,904.00 |
| | 4/26/2007 | 800 | $66.14 | $52,912.00 |
| | 4/26/2007 | 600 | $66.48 | $39,888.00 |
| | 4/26/2007 | 1,000 | $66.49 | $66,490.00 |
| | 4/26/2007 | 200 | $66.50 | $13,300.00 |
| | 5/1/2007 | 400 | $60.63 | $24,252.00 |
| | 5/1/2007 | 400 | $60.65 | $24,260.00 |
| | 5/1/2007 | 150 | $60.70 | $9,105.00 |
| | 5/1/2007 | 400 | $60.74 | $24,296.00 |
| | 5/1/2007 | 200 | $60.75 | $12,150.00 |
| | 5/1/2007 | 1,400 | $60.76 | $85,064.00 |
| | 5/1/2007 | 900 | $60.77 | $54,693.00 |
| | 5/1/2007 | 400 | $60.78 | $24,312.00 |
| | 5/1/2007 | 400 | $60.89 | $24,356.00 |
| | 5/1/2007 | 400 | $60.95 | $24,380.00 |
| | 5/1/2007 | 400 | $60.96 | $24,384.00 |
| | 5/1/2007 | 150 | $61.01 | $9,151.50 |
| | 5/1/2007 | 100 | $61.03 | $6,103.00 |
| | 5/1/2007 | 200 | $61.05 | $12,210.00 |
| | 5/1/2007 | 100 | $61.10 | $6,110.00 |
| | 5/1/2007 | 300 | $61.11 | $18,333.00 |
| | 5/1/2007 | 700 | $61.16 | $42,812.00 |
| | 5/1/2007 | 400 | $61.17 | $24,468.00 |
| | 5/1/2007 | 400 | $61.18 | $24,472.00 |
| | 5/1/2007 | 100 | $61.22 | $6,122.00 |
| | 5/1/2007 | 200 | $61.23 | $12,246.00 |
| | 5/1/2007 | 200 | $61.32 | $12,264.00 |
| | 5/1/2007 | 200 | $61.33 | $12,266.00 |
| | 5/1/2007 | 100 | $61.36 | $6,136.00 |
| | 5/1/2007 | 300 | $61.37 | $18,411.00 |
| | 5/1/2007 | 100 | $61.40 | $6,140.00 |
| | 5/1/2007 | 400 | $61.53 | $24,612.00 |

| | | | | |
|---|---|---|---|---|
| | 5/1/2007 | 200 | $61.54 | $12,308.00 |
| | 5/1/2007 | 100 | $61.65 | $6,165.00 |
| | 5/1/2007 | 100 | $61.66 | $6,166.00 |
| | 5/1/2007 | 120 | $61.83 | $7,419.60 |
| | 5/1/2007 | 80 | $61.88 | $4,950.40 |
| | 5/25/2007 | 27,973 | $65.00 | $1,818,245.00 |
| | 5/25/2007 | 4,561 | $65.01 | $296,510.61 |
| | 5/25/2007 | 1,432 | $65.02 | $93,108.64 |
| | 5/25/2007 | 2,400 | $65.03 | $156,072.00 |
| | 5/25/2007 | 1,150 | $65.04 | $74,796.00 |
| | 5/25/2007 | 350 | $65.05 | $22,767.50 |
| | 5/25/2007 | 700 | $65.06 | $45,542.00 |
| | 5/25/2007 | 543 | $65.08 | $35,338.44 |
| | 5/25/2007 | 600 | $65.10 | $39,060.00 |
| | 5/25/2007 | 300 | $65.11 | $19,533.00 |
| | 5/25/2007 | 200 | $65.12 | $13,024.00 |
| | 5/25/2007 | 600 | $65.13 | $39,078.00 |
| | 5/25/2007 | 200 | $65.14 | $13,028.00 |
| | 5/25/2007 | 191 | $65.19 | $12,451.29 |
| | 6/1/2007 | 1,500 | $65.15 | $97,725.00 |
| | 6/1/2007 | 300 | $65.16 | $19,548.00 |
| | 6/1/2007 | 600 | $65.17 | $39,102.00 |
| | 6/1/2007 | 200 | $65.18 | $13,036.00 |
| | 6/1/2007 | 100 | $65.19 | $6,519.00 |
| | 6/1/2007 | 500 | $65.20 | $32,600.00 |
| | 6/1/2007 | 100 | $65.21 | $6,521.00 |
| | 6/1/2007 | 100 | $65.27 | $6,527.00 |
| | 6/1/2007 | 100 | $65.28 | $6,528.00 |
| | 6/1/2007 | 600 | $65.29 | $39,174.00 |
| | 6/1/2007 | 100 | $65.31 | $6,531.00 |
| | 6/1/2007 | 100 | $65.32 | $6,532.00 |
| | 6/1/2007 | 600 | $65.36 | $39,216.00 |
| | 6/1/2007 | 700 | $65.38 | $45,766.00 |
| | 6/1/2007 | 594 | $65.39 | $38,841.66 |
| | 6/1/2007 | 606 | $65.40 | $39,632.40 |
| | 6/1/2007 | 1,200 | $65.42 | $78,504.00 |
| | 6/1/2007 | 200 | $65.44 | $13,088.00 |
| | 6/1/2007 | 700 | $65.44 | $45,808.00 |
| | 6/1/2007 | 100 | $65.45 | $6,545.00 |
| | 6/1/2007 | 300 | $65.51 | $19,653.00 |
| | 6/1/2007 | 299 | $65.52 | $19,590.48 |
| | 6/1/2007 | 1,200 | $65.90 | $79,080.00 |
| | 6/1/2007 | 300 | $65.93 | $19,779.00 |
| | 6/1/2007 | 200 | $65.94 | $13,188.00 |
| | 6/1/2007 | 200 | $66.01 | $13,202.00 |
| | 6/1/2007 | 140 | $66.03 | $9,244.20 |
| | 6/1/2007 | 200 | $66.07 | $13,214.00 |
| | 6/1/2007 | 100 | $66.11 | $6,611.00 |
| | 6/1/2007 | 400 | $66.12 | $26,448.00 |

| | | | | |
|---|---|---|---|---|
| | 6/1/2007 | 1,000 | $66.18 | $66,180.00 |
| | 6/1/2007 | 706 | $66.19 | $46,730.14 |
| | 6/1/2007 | 200 | $66.20 | $13,240.00 |
| | 6/1/2007 | 100 | $66.23 | $6,623.00 |
| | 6/1/2007 | 100 | $66.35 | $6,635.00 |
| | 6/1/2007 | 600 | $66.43 | $39,858.00 |
| | 6/1/2007 | 1,662 | $66.47 | $110,473.14 |
| | 6/1/2007 | 1,900 | $66.48 | $126,312.00 |
| | 6/1/2007 | 897 | $66.50 | $59,650.50 |
| | 6/1/2007 | 100 | $66.51 | $6,651.00 |
| | 6/1/2007 | 399 | $66.54 | $26,549.46 |
| | 6/1/2007 | 598 | $66.55 | $39,796.90 |
| | 6/1/2007 | 199 | $66.56 | $13,245.44 |
| | 6/1/2007 | 200 | $66.57 | $13,314.00 |
| | 6/1/2007 | 200 | $66.65 | $13,330.00 |
| | 6/1/2007 | 800 | $66.66 | $53,328.00 |
| | 6/1/2007 | 600 | $66.72 | $40,032.00 |
| | 6/1/2007 | 1,000 | $66.88 | $66,880.00 |
| | 6/1/2007 | 1,100 | $66.90 | $73,590.00 |
| | 6/1/2007 | 300 | $66.93 | $20,079.00 |
| | | **125,000** | | **$7,818,657.30** |
| | | | | |
| **HAGAN** | 6/1/2007 | 25,667 | $67.00 | $1,719,689.00 |
| | 6/1/2007 | 350 | $67.01 | $23,453.50 |
| | 6/1/2007 | 100 | $67.02 | $6,702.00 |
| | 6/1/2007 | 99 | $67.04 | $6,636.96 |
| | 6/1/2007 | 100 | $67.13 | $6,713.00 |
| | 6/1/2007 | 130 | $67.16 | $8,730.80 |
| | 6/1/2007 | 100 | $67.18 | $6,718.00 |
| | 6/1/2007 | 100 | $67.19 | $6,719.00 |
| | 6/1/2007 | 548 | $67.24 | $36,847.52 |
| | 6/1/2007 | 99 | $67.28 | $6,660.72 |
| | 6/1/2007 | 100 | $67.29 | $6,729.00 |
| | 6/1/2007 | 200 | $67.31 | $13,462.00 |
| | 6/1/2007 | 100 | $67.32 | $6,732.00 |
| | 6/4/2007 | 32,307 | $67.00 | $2,164,569.00 |
| | | **60,000** | | **$4,020,362.50** |
| | | | | |
| **TIERNEY** | 6/8/2007 | 1,000 | $65.68 | $65,676.00 |
| | 6/8/2007 | 14,000 | $65.83 | $921,686.64 |
| | | **15,000** | | **$987,362.64** |
| | | | | |
| **TOTAL:** | | **304,779** | | **$19,477,997.88** |

51. Certain of defendant Brown's stock sales were particularly suspicious. On September 10, 2007, defendant Brown sold 12,000 shares of his personally held NutriSystem stock, thereby collecting approximately $687,120 in gross proceeds. Only nine days later, on September 19, 2007,

the *Associated Press* published an article titled "NutriSystem shares fall after Citigroup analyst cites near-term challenges," which reported:

> Shares of NutriSystem Inc., a diet and fitness products company, dropped Wednesday after a Citigroup analyst said the company may face short-term issues that could depress sales and profit.
>
> Shares dropped $5.75, or 10 percent, to $51.20 in afternoon trading.
>
> Analyst Gregory R. Badishkanian lowered his price target to $81 from $90 and said in a note to investors that NutriSystem could be hurt as more dieters try the new GlaxoSmithKline weight-loss drug Alli. He estimates that more than 2 million people have tried Alli since it launched in mid-June.
>
> "Though Alli sales have likely moderated since its intro, we think NutriSystem will be impacted in the near-term," he said. But he added that the company should be able to "overcome the threat in the long-run," particularly since Alli has potential side effects and less effective weight loss.
>
> The drug, meant to be taken with meals, blocks the absorption of about one-quarter of any fat consumed. The fat is passed out of the body, sometimes resulting in loose stools.
>
> Comparisons to last year's third-quarter results are also difficult, Badishkanian said. Last year, the company introduced a successful campaign with football legend Dan Marino to boost sales to men. The chain's profit skyrocketed, beating Wall Street expectations.
>
> Badishkanian said regardless of whether the company is able to post solid results in the third and fourth quarters, investors should pay close attention to NutriSystem's first quarter, since it marks the start of diet season in January.
>
> "We think the key is for NutriSystem to set themselves up for solid growth in 2008," he said.

52. Upon this news, shares of the Company's stock fell $6.87 per share, or 12%, to close at $50.08 per share, on heavy trading volume. Thus, defendant Brown made an extra $85,000 by selling his stock a few days before the information in this report came out.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

53. Plaintiff brings this action derivatively in the right and for the benefit of NutriSystem (1) to redress injuries suffered by NutriSystem as a direct result of the violations of law, breaches of fiduciary duty, waste of corporate assets and unjust enrichment, as well as the aiding and abetting thereof, by Individual Defendants, and (2) to recover or obtain benefits which the Company is entitled to by virtue of the allegations of fiduciary misconduct set forth herein. NutriSystem is

named as a nominal defendant solely in a derivative capacity, so that it may obtain the benefits and remedies sought herein on its behalf. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

54. Plaintiff will adequately and fairly represent the interests of NutriSystem in enforcing and prosecuting its rights.

55. Plaintiff is and was an owner of the stock of NutriSystem during times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

56. The current Board of NutriSytem consists of the following eight individuals; defendants Berg, Bernstock, Devine, DiPiano, Hagan, Musser, Tierney and Zarrilli.

57. Defendants Berg, Bernstock, Devine, DiPiano, Hagan, Musser, Tierney and Zarrilli as members of the Board during the Relevant Period authorized the buyback of over $97 million worth of the Company's shares at artificially inflated prices. The Board's decision to authorize the share buyback was not the product of valid business judgment. Among other things, the Board failed to properly discuss or consider the negative effect that the imminent release of GlaxoSmithKline's Alli drug would have on the Company's business prospects. Further, defendants Hagan, Berg and Tierney engaged in self-dealing in that they sold their personally held shares while directing the Company to buy shares. Accordingly, demand is futile.

58. As a result of their access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and attendance at management and Board meetings, each of the defendants knew the adverse non-public information regarding NutriSystem's true business prospects. While in possession of this material adverse non-public information regarding the Company, the following current members of the NutriSystem Board participated in the illegal insider selling by selling the following amounts:

(a) while in possession of adverse non-public information, Hagan sold 60,000 shares of NutriSystem stock for proceeds of $4,020,362.50;

(b) while in possession of adverse non-public information, Berg sold 16,112 shares of NutriSystem stock for proceeds of $1,127,840; and

(c) while in possession of adverse non-public information, Tierney sold 15,000 shares of NutriSystem stock for proceeds of $987,362.64.

Because these defendants received a personal financial benefit from the challenged insider trading transactions, these defendants are interested. Moreover, these defendants face a sufficiently substantial threat of liability for breach of their fiduciary duties for insider selling. Defendant Hagan and Tierney's sales are especially suspicious since they traded within days of the mid-June launch of GlaxoSmithKline's new Alli weight loss drug. Since these directors have breached their fiduciary duties and are interested, any demand upon them is futile.

59. Defendants Berg, Devine, DiPiano and Zarrilli were, during the Relevant Period, members of the Audit Committee. According to its charter, the Audit Committee was responsible for reviewing and discussing NutriSystem's earnings press releases and earnings guidance provided to the public. Specifically, the Audit Committee's charter provides as follows:

> In furtherance of this purpose, the committee shall have the following authority and responsibilities:
>
> 2. To discuss with management and the independent auditor, as appropriate, earnings press releases and financial information and earnings guidance provided to the public.
>
> * * *
>
> 4. To discuss with management and the independent auditor, as appropriate, any audit problems or difficulties and management's response, and the company's risk assessment and risk management policies, including the company's major financial risk exposure and steps taken by management to monitor and mitigate such exposure.

Moreover, the Audit Committee's purpose was "to assist the board in its oversight of the integrity of the financial statements of the company [and] of the company's compliance with legal and regulatory requirements…." In connection with these tasks, the Audit Committee must meet at least quarterly with management. Thus, the Audit Committee was responsible for directly participating in the dissemination of NutriSystem's earnings press releases and guidance. Accordingly, defendants Berg,

Devine, DiPiano and Zarrilli breached their fiduciary duties of due care, loyalty, and good faith because the Audit Committee participated in the preparation of improper statements and earnings press releases that contained improper material information. Particularly, these defendants reviewed and failed to correct NutriSystem's improper earnings press releases and guidance described above. These defendants also breached their fiduciary duties in failing to complete an accurate assessment of NutriSystem's financial condition before the Board met to authorize the stock repurchase. Thus, Berg, Devine, DiPiano and Zarrilli face a sufficiently substantial likelihood of liability making any demand upon them is futile.

60. The principal professional occupation of defendant Hagan is his employment with NutriSystem, pursuant to which he received and continues to receive substantial monetary compensation and other benefits. Specifically, NutriSystem paid Hagan the following compensation:

| Defendant | Fiscal Year | Salary | Bonus | Option Awards |
|---|---|---|---|---|
| Hagan | 2006 | $165,000 | $295,000 | $37,772 |

Accordingly, Hagan lacks independence from defendants DiPiano and Tierney who are not disinterested and/or independent and who exert influence over Hagan's compensation by virtue of their positions as members of the Compensation Committee. The Compensation Committee has the authority to review and approve Hagan's base salary, bonus and equity compensation. This lack of independence rendered defendant Hagan incapable of impartially considering a demand to commence and vigorously prosecute this action.

61. NutriSystem has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for NutriSystem any part of the damages NutriSystem suffered and will suffer thereby.

62. Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiff, the current Board has failed and refused to seek to recovery for NutriSystem for any of the wrongdoing alleged by plaintiff herein.

63. Plaintiff has not made any demand on shareholders of NutriSystem to institute this action since such demand would be a futile and useless act for the following reasons:

(a) NutriSystem is a publicly held company with over 34 million shares outstanding, and thousands of shareholders;

(b) Making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c) Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## COUNT I

### Derivatively Against All Defendants for Violation of §10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder

64. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

65. During the Relevant Period, the Individual Defendants disseminated or approved public statements that improperly portrayed the NutriSystem's business prospects, growth and margins. The Individual Defendants knew, consciously disregarded, were reckless and grossly negligent in not knowing or should have known that the Company's public statements concerning its business prospects were misleading.

66. The Insider Selling Defendants also sold over $19 million worth of shares of NutriSystem's common stock at inflated prices during the Relevant Period while in possession of material non-public information. These defendants misappropriated NutriSystem's proprietary information and violated their so-called "abstain or disclose" duties under the federal securities laws when they sold NutriSystem stock without disclosing the information alleged to have been concealed herein.

67. At the same time the price of the Company's common stock was inflated due to the improper reporting of the value of NutriSystem's business prospects, especially concerning the increasing competition that the Company was facing, and the Insider Selling Defendants were selling

stock into the market, the Individual Defendants were causing NutriSystem to repurchase over $97 million worth of its own stock on the open market at an average inflated price of approximately $48 per share, which is substantially higher than NutriSystem's current share price of under $31 per share.

68. As such, the Individual Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they:

(a) Employed devices, schemes and artifices to defraud;

(b) Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) Engaged in acts, practices and a course of business that operated as a fraud or deceit upon NutriSystem and others in connection with their purchases of NutriSystem common stock during the Relevant Period.

69. As a result of the Individual Defendants' misconduct, NutriSystem has and will suffer damages in that it paid artificially inflated prices for NutriSystem common stock purchased on the open market. NutriSystem would not have purchased NutriSystem common stock at the prices it paid, had the market previously been aware that the market price of NutriSystem's stock was artificially and falsely inflated by defendants' misleading statements. As a direct and proximate result of these defendants' wrongful conduct, NutriSystem suffered damages in connection with its purchases of NutriSystem common stock during the Relevant Period. By reason of such conduct, the Individual Defendants are liable to the Company pursuant to §10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder.

**COUNT II**

**Derivatively Against Defendants Hagan, Brown, Berg, Devine, DiPiano and Zarilli for Violation of §20(a) of the Exchange Act**

70. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

71. Defendant Hagan, NutriSystem's Chairman, Chief Executive Officer and President,

defendant Brown, NutriSystem's Chief Financial Officer, and defendants Berg, Devine, DiPiano and Zarilli, as members of the Audit Committee, directly or indirectly controlled or induced the Individual Defendants who violated §10(b) of the Exchange Act and Rule 10b-5 as alleged above.

72. These defendants are jointly and severally liable to the same extent as the Individual Defendants under §20(a) of the Exchange Act. These defendants did not act in good faith.

## COUNT III

### Against All Defendants for Breach of Fiduciary Duty for Improper Financial Reporting

73. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

74. The Individual Defendants owed and owe NutriSystem fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe NutriSystem the highest obligation of good faith, fair dealing, loyalty and due care.

75. The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

76. Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the business prospects of the Company and failed to correct the Company's publicly reported financial guidance. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

77. As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, NutriSystem has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

78. Plaintiff, on behalf of NutriSystem, has no adequate remedy at law.

## COUNT IV

### Against the Insider Selling Defendants for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information

79. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

80. At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold NutriSystem common stock on the basis of such information.

81. The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects. It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold NutriSystem common stock.

82. At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated. The Insider Selling Defendants' sales of NutriSystem common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

83. Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

## COUNT V

### Against All Defendants for Waste of Corporate Assets

84. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

85. As a result of the misconduct described above, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, paying $97 million to repurchase the Company' stock, paying bonuses to certain of its executive officers and incurring potentially hundreds of millions of dollars of legal liability and/or legal costs to defend defendants' unlawful actions.

86. As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

87. Plaintiff, on behalf of NutriSystem, has no adequate remedy at law.

## COUNT VI

### Against All Defendants for Unjust Enrichment

88. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

89. By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of NutriSystem.

90. Plaintiff, as a shareholder and representative of NutriSystem, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A. Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, waste of corporate assets and unjust enrichment;

B. Declaring that the Individual Defendants are liable under of §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and that defendants Hagan, Brown, Berg, Devine, DiPiano and Zarilli are jointly and severally liable under §20(a) of the Exchange Act and awarding NutriSystem damages;

C. Directing NutriSystem and the current Director Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect NutriSystem and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as

may be necessary to place before shareholders for a vote the following Corporate Governance Policies:

1. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

2. a provision to permit the shareholders of NutriSystem to nominate at least three candidates for election to the Board;

3. a proposal to control insider selling;

4. a proposal to ensure that NutriSystem prudently expends funds in stock repurchase programs; and

5. appropriately test and then strengthen the internal audit and control functions.

D. Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting defendants' assets so as to assure that plaintiff on behalf of NutriSystem has an effective remedy;

E. Awarding to NutriSystem restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

F. Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

G. Granting such other and further relief as the Court deems just and proper

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: December 7, 2007

STEIN & SILVERMAN, P.C.
LEON W. SILVERMAN (I.D. NO. 04244)
ALLISON LAPAT (I.D. NO. 74789)

LEON W. SILVERMAN

230 S. Broad Street
17th Floor
Philadelphia, PA 19102
Telephone: (215) 985-0255
Facsimile: (215) 985-0342
Email: leon@steinandsilverman.com
Email: allison@steinandsilverman.com

THE WARNER LAW FIRM
PAUL T. WARNER
6363 Woodway, Suite 910
Houston, TX 77057
Telephone: (713) 783-7077
Facsimile: (713) 583-9196
Email: pwarner@warner-law.net

Attorneys for Plaintiff

302018_1.DOC

VERIFICATION

I, Paul T. Warner, hereby declare as follows:

1. I am a member of The Warner Law Firm, counsel for plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. I am informed and believe the matters therein are true and on that ground allege that the matters stated therein are true.

2. I make this Verification because plaintiff is absent from Harris County, Texas where I maintain my office.

Executed this 3rd day of December, 2007, at Houston, Texas.

Paul T. Warner